IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,       )
                                )
       Plaintiff,          ) Case No. 1:13-CR-93
                                )
  vs.                           )
                                )
Brenda Ashcraft,                )
                                )
       Defendant.          )

O R D E R

This matter is before the Court on Defendant Brenda Ashcraft's motion for release of <u>Brady</u> materials (Doc. No. 35), motion to suppress emails (Doc. No. 36), motion to suppress any and all information seized from cell phones (Doc. No. 37), and motion to suppress evidence seized from 822 Dorgene Lane, Cincinnati, Ohio 45224 (Doc. No. 38).  For the reasons that follow, Defendant's motions are not well-taken and are **DENIED.**

I. Background

In August 2013, the grand jury in this district return a three-count indictment charging Defendant Brenda Ashcraft with wire fraud, in violation of 18 U.S.C. § 1343 (Count 1), money laundering, in violation of 18 U.S.C. § 1957 (Count 2), and making material false statements in connection with sale of securities, in violation of 15 U.S.C. § 78(j)(b) and 17 C.F.R. § 240-10b-5 (Count 3).

The indictment alleges that beginning in 2009 and continuing through 2013, the Defendant devised and executed a scheme or artifice to defraud by selling real estate investment trusts ("REITs") through her company, French Manor Properties.  The

indictment alleges that the Defendant represented that an investor's funds would be used to purchase residential and commercial properties through short sales in order to acquire the properties at "wholesale" prices. The Defendant allegedly promised investors that their investments would be held in escrow until the REIT closed. The Defendant allegedly further promised investors that their investments were secured by real estate as collateral, which would be sold and used to reimburse the investors' investments. The Defendant allegedly also promised investors that their investments were insured through a policy held by Stewart Title Guaranty Company. The Defendant allegedly promised investors investment returns of 10% for a three-month investment.

The indictment alleges, however, that the Defendant operated a Ponzi scheme rather than a legitimate REIT business. The indictment alleges that the Defendant never registered any REITs with the State of Ohio, that the Defendant never purchased any REITs with investors' funds, that the Defendant did not keep investors' funds in an escrow account, and that the Defendant never insured investors' investments. The indictment alleges, rather, that the Defendant paid "returns" on investments using other investors' investments and that she diverted the remainder of the investments for her own personal use and benefit. The indictment alleges that sometimes these payment checks bounced due to insufficient funds. The indictment alleges that the Defendant fraudulently obtained approximately $15,000,000 during the period covered by the indictment.

Agents of the Federal Bureau of Investigation obtained at least three search warrants from magistrate judges during the investigation in this case.

In July 2013, agents obtained a warrant to search the Defendant's residence at

822 Dorgene Lane, Cincinnati, Ohio for records, emails, investor agreements, correspondence with investors, and other information related to REITs, bank and credit card company records, records of checks, wire transfers, letters of credit, bonds and securities, accounting or investment spreadsheets, travel records, text messages, voice mails to or from investors and/or potential conspirators and witnesses, all documentation related to Cincinnati Reds baseball games and concerts, plays, and amusement parks, all records and information concerning a conspiracy to defraud investors, records and information related to the Defendant's email account, agentashcraft@gmail.com, and anything constituting unlawful proceeds of the alleged scheme.  The warrant also sought to seize any computers or storage medium that contained or stored information identified by the warrant.  Doc. No. 40-1.

The application for this search warrant was supported by a lengthy affidavit filed by Special Agent Christopher Bishop.  As probable cause indicating that the Defendant had executed a scheme or artifice to defraud, Special Agent Bishop indicated, in summary, the following:

1.  Although the Defendant represented that investors' funds were insured by Stewart Title Company, Stewart responded to a subpoena by indicating that it had no record of business with either the Defendant or French Manor Properties.

2. The Defendant showed investors what purported to be a screen shot of pending wire transfer of $4,800,000 from Wells Fargo Bank but that Wells Fargo responded to a subpoena by indicating that it had no knowledge of such a transaction and that it did not have any business with either the Defendant or French Manor properties.

3. An investigation by the Ohio Department of Commerce discovered numerous potential victims and that the Defendant was using investor funds for personal expenses.

3

4. The Ohio Department of Commerce reported that the Defendant had not registered any REITs in Ohio or with the Securities and Exchange Commission.

5. French Manor's bank account at Fifth Third showed large wire transfers out of the account and large checks being deposited to the account. French Manor's account address was the same as the Defendant's residence address.

6. Examination of the Defendant's Fifth Third Bank account and American Express account showed no significant income not related to investor funds and that the Defendant used investor funds for personal use or to circulate back to other investors. As an example, from January 2010 through December 2010, the Defendant purchased approximately $106,000 in Cincinnati Reds tickets.

7. Investors R.G. and J.G. invested approximately $580,000 with French Manor properties but an analysis of French Manor's bank account did not show any funds being transferred to a recognizable escrow account. The Defendant still owes R.G. repayment of principal of almost $300,000. The Defendant told R.G. that repayment of his funds was being held up by an audit of Wells Fargo. In April 2013, the Defendant told R.G. that she was in Mexico but that repayment of his funds was expected to occur in May 2013. The REIT agreements list the Defendant as the trustee and show the principal place of business to be the same as her home address. The investor agreements were transferred by facsimile machine and R.G. corresponded with the Defendant at the email address of agentashcraft@gmail.com.

8. The Defendant told investor T.W. that there was no risk to the REIT investment and the worst that would happen would be the return of her principal investment if the deal did not go through. The Defendant told T.W. that she would repay T.W. from her own money if she had to. T.W. initially invested $58,000 with the Defendant but was unsure if she was ever repaid. T.W. apparently invested a total of $332,700 with the Defendant. In July 2012, the Defendant wrote T.W. a check in the amount of $84,000 but asked T.W. not to cash it for a few days until funds were available. In March or April 2013, T.W. called Fifth Third Bank to determine if funds were available and Fifth Third informed T.W. that the Defendant's account was closed in February 2013. Investor agreement documents listed the same address as the Defendant's home address. T.W. also received a check from a French Manor CitiBank account that listed the Defendant's home address on the account.

9. In October 2012, investor L.M. complained to the Ohio Department of Commerce about the Defendant. L.M. complained that he did not receive copies of the investor paperwork he signed, that the Defendant had lied about

4

    the transactions, that the Defendant was not loyal to him or his interests, and that the Defendant would not pay his commissions.  One of L.M.'s investor agreements in September 2012 listed the principal place of business as the Defendant's home address.  L.M. wire transferred funds from outside of this district into French Manor's Fifth Third Bank account.  L.M. also corresponded with the Defendant through email and text messaging. L.M. emailed correspondence to the Defendant at agentashcraft@gmail.com.

10. In October or November 2011, the Defendant represented to investor J.R. that she could invest J.R.'s money in an REIT account from which it would never move.  The Defendant further represented to J.R. that there was "zero risk" to the investment and the worst that would happen would be the return of his principal.  The Defendant also represented that J.R.'s funds were only to be used as collateral to secure buyers for other properties, such as malls in Florida and New Orleans.  The Defendant represented to J.R. that she had $4,000,000 to $6,000,000 "laying around" but forensic analysis showed that the Defendant does not have sizable assets.  J.R. invested approximately $140,000 with the Defendant in early 2012.  The investor agreement between J.R. and French Manor lists the Defendant's home address as the principal place of business.

    In mid-June 2012, the Defendant solicited a $72,000 investment from investor M.B.  In August 2012, J.R. traveled to the Defendant's home to demand the return of his and M.B.'s money.  In September 2012, the Defendant met J.R. at a United Dairy Farmer's store and gave him a check for $159,618 but asked him not to cash it yet.  J.R. tried to cash the check every day for a week but the check bounced each time.  Eventually, J.R. was able to get money from the Defendant.  M.B. received the return of her $72,000 but there was no interest on her investment.  J.R. had another investment with the Defendant with his ex-wife, L.R., and L.R. has not received her money back.

    Forensic analysis of the Defendant's French Manor account at Fifth Third Bank showed that M.B.'s funds were not sent to an escrow account or used for the purpose represented by the Defendant.  M.B.'s investor agreement showed that French Manor's principal place of business was the Defendant's home address.  M.B. corresponded with the Defendant through email.  The email address used by the Defendant was agentashcraft@gmail.com.

Doc. No. 40-1, at 10-20.

    Special Agent Bishop's affidavit sought permission to search the Defendant's residence for records in whatever form they might be found, including data stored on a computer hard drive or other storage medium.  Agent Bishop went on to explain how

data can be recovered from a computer hard drive even after it has been deleted. Special Agent Bishop stated that based on his investigation, there was reason to believe that computer equipment was used in the alleged scheme to defraud. Special Agent Bishop also sought to search for information on how computers were used, who used them, and when. Special Agent Bishop stated that there was probable cause to believe this information would be on storage media at the Defendant's residence and explained why this was so. See id. at 20-26.

Magistrate Judge Bowman approved the search warrant application on July 17, 2013. Agents executed the warrant on July 19, 2013. The search warrant return indicates that agents seized numerous computers, laptops and tablets, computer storage media, records and documents, checks, Cincinnati Reds tickets, and several cell phones. See Case No. 1:13-mj-465, Doc. No. 4.

In December 2013, Special Agent Bishop applied for a search warrant to search the Defendant's iCloud customer account stored at Apple's iCloud Service in Cupertino, California. Doc. No. 40-2. The search warrant application sought records related to remote wipe logs, remote wipe activity and full backup file content. Special Agent Bishop's affidavit repeated much of the information contained in the affidavit summarized above. Agent Bishop also indicated that the Defendant used her Apple iPhone to conduct business on behalf of French Manor, including to text and email correspondence with investors. Agent Bishop explained that agents seized the Defendant's iPhone during the July search but that subsequent forensic analysis showed that it had been "wiped," i.e., data had been erased, remotely sometime after the F.B.I. took possession of it. Agent Bishop stated that a representative of Apple

informed him that if the phone had been wiped remotely, remote wipe activity could be found on the iCloud account and that it would identify the dates of the activity and the internet protocol address from which the wipe was conducted.  Magistrate Judge Litkovitz approved this search warrant application on December 19, 2013.  Doc. No. 40-2.  The warrant was served on Apple on December 19, 2013 but the return indicates that Apple either did not have the information sought by the warrant or could not find the information based on the parameters provided in the warrant.  See Case No. 1:13-mj-766, Doc. No. 3.

Finally, as is relevant here, in April 2014, Special Agent Bishop applied for a search warrant to obtain records from Google, Inc. related to the account bevfmp@gmail.com.  Special Agent Bishop's affidavit in support of the warrant indicates that a person named "Bev Williams" used this email account to contact French Manor investors but that there is reason to believe that "Bev Williams" is a fictitious person and in fact is the Defendant.  Subscriber information provided by Cincinnati Bell pursuant to a subpoena shows that this email account was established from an ISP address that traces back to the Defendant's home.  Special Agent Bishop indicates that there is reason to believe that the Defendant used this email address to further the alleged scheme to defraud.  For instance, this email account was used in emails to explain investor account activity.  Doc. No. 40-3.  Magistrate Judge Litkovitz approved this search warrant application on April 15, 2014.  The warrant was served on Google the same day.  See Case No. 1:14-mj-226, Doc. No. 3.  The return indicates that Google acknowledged service of the warrant but there is no indication that Google has provided any documents or records responsive to the warrant.

The Defendant filed the instant motions on July 4, 2014.  The Court will take up these motions seriatim.

### A. Request for Production of Brady Materials

The Defendant's first motion (Doc. No. 35) requests the government to produce all exculpatory and impeachment material pursuant to Brady v. Maryland, 373 U.S. 86 (1963), and its progeny.  It is well-established, however, that Brady does not confer any discovery rights on a criminal defendant; the government is the sole judge of what material requires disclosure under Brady and acts at its own peril in carrying out its obligations under Brady.  United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988). In this case, the government's responsive memoranda indicates that it is aware of and intends to comply with its disclosure obligations under Brady.  The Court cannot require anything further from the government.

This motion is not well-taken and is **DENIED.**

### B. Motions to Suppress

Defendant also filed three separate motions to suppress.  Defendant's first motion (Doc. No. 36) moves to suppress "any and all emails sent to and from [the Defendant] the government obtained from non-intended recipients."  Citing Warshak v. United States, 532 F.3d 521 (6th Cir. 2008), Defendant contends that the content of the emails does not meet the guidelines for compelled disclosure under the Electronics Communications Privacy Act ("ECPA").  Defendant, however, has not identified any specific emails which allegedly were seized in violation of the ECPA, but the government notes in any event that the ECPA does not apply because it obtained emails pursuant to a search warrant issued by a magistrate judge.

8

Defendant's second motion to suppress (Doc. No. 37) moves to suppress any and all information seized from cell phones and computers. Defendant argues in summary fashion that this information should be suppressed because the search warrant was not supported by probable cause, failed to describe with particularity the part or portion of the computer or cell phone to be search, failed to specify the things to be seized, and failed to demonstrate reason to believe that the cell phone or computer would contain instrumentalities of a crime, evidence of a crime, or fruits of a crime.

Defendant's third motion to suppress (Doc. No. 38) moves to suppress all items seized from her residence at 822 Dorgene Lane in Cincinnati, Ohio. Defendant argues, again in summary fashion, that the search warrant was not supported by probable cause, failed to describe the place or residence to be searched and the things to be seized, failed to establish probable cause that the items to be searched for would be located on the property, that the scope of the warrant was impermissibly exceeded, and that the scope of the search warrant was impermissibly broad and based on stale information.

Initially, the Court notes that each of these motions is little more than a pro forma assertion that the government seized evidence in violation of the Fourth Amendment. The Court would, therefore, be justified in denying each of these motions on that basis alone. See United States v. Smith, 783 F.2d 648, 650 (6th Cir. 1986)("The burden of production and persuasion rests on the person seeking to suppress evidence."); see also Doc. No. 8 (Court's pre-trial order) at 2 ("It is expected that every motion filed will be based on real factual need and be supported by a substantial foundation and that such foundation will be explicitly stated in the motion, pursuant to Local Rule 7.2(a)(1)

9

and Local Criminal Rule 1.2. The Court will not rule upon pro forma motions not based upon a particularized showing of need or not based upon controlling law and the particular facts of this case. **Such motions should be considered denied when filed on the basis of this Order**.") (emphasis in original). In any event, the Court does not find any Fourth Amendment violation based on the materials currently before it.

Initially, the Court finds that Special Agent Bishop's initial affidavit more than adequately sets forth probable cause to believe that the Defendant committed wire fraud and that evidence of this crime would be found in her residence, on her computers, and on her cell phones. The essential elements of wire fraud are (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. United States v. Daniel, 329 F.3d 480, 485 (6th Cir. 2003).

As described by Special Agent Bishop's affidavit, the Defendant established a company - or an least an entity - called French Manor Properties through which she solicited investors for REITs. Investment agreements and bank records showed that French Manor's business address was the same as the Defendant's home address. The Defendant allegedly represented to potential investors that she had substantial financial backing, as evidenced by the alleged false Wells Fargo wire transfer document, and that their investments would held in escrow and at no risk to the principal. Allegedly, however, the Defendant failed to register any REITs with the State of Ohio or with the Securities and Exchange Commission. Moreover, forensic analysis of the Defendant's and French Manor's bank accounts showed that the Defendant did not put investors' funds into any escrow accounts, or make any real estate investments

10

for that matter, but instead that the Defendant allegedly diverted these funds for her own use. The Defendant allegedly forestalled complaining investors by presenting them checks which later proved to lack sufficient funds to be honored. Finally, Special Agent Bishop's affidavit indicates that the Defendant used her computer, cell phone, and facsimile transmissions to solicit investors for the REITs. Therefore, the facts set out in Special Agent Bishop's affidavit clearly set forth a scheme or artifice to defraud through use of interstate wire communications with intent to deprive persons of money or property.

      Special Agent Bishop's affidavit established reason to believe that evidence of this crime would be found in the Defendant's home because French Manor Properties' documents and records showed her residence address as its business address. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005) ("To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search.") (internal quotation marks omitted). "One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home." United States v. Abboud 438 F.3d 554, 572 (6th Cir. 2006). The Defendant does not offer any specifics as to how the agents exceeded the scope of the warrant but it was reasonable to believe that evidence of wire fraud would be found throughout her residence and on her computers and cell phones based on the available information. See United States v. Ross, 456 U.S. 798, 820-21 (1982) ("A lawful search of a fixed premises generally extends to the

entire area in which the object of the search may be found and is not limited by the fact that separate acts of entry or opening may be required to complete the search.").

Special Agent Bishop's affidavit set forth with reasonable specificity that agents sought to seize documents, records, computer information, emails, and texts related to the Defendant's operation of French Manor Properties.  United States v. Gardiner 463 F.3d 445, 471 (6th Cir. 2006) (warrant not overbroad where it described with particularity the types of documents and records to be seized).

Special Agent Bishop's affidavit also reasonably set forth the need to search the Defendant's computers and other electronic storage media for evidence of wire fraud and the method by which the search would be conducted.  United States v. Richards, 659 F.3d 527, 538 (6th Cir. 2011)("While officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant, . . . a computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause.").  Although it appears that the agents were not able to obtain any information from the Defendant's cell phone, because it allegedly had been wiped after its seizure, Special Agent Bishop's second affidavit (Doc. No. 40-2) sets forth probable cause to believe that the Defendant used to her cell phone to commit wire fraud.  The same affidavit also demonstrates probable cause to obtain iCloud information from Apple, although that apparently was a fruitless avenue of inquiry as well.

Special Agent Bishop's affidavit was not based on stale information.  Much of the information contained in the affidavit pre-dated the warrant by only a few months. Moreover, the fact that the alleged crime or crimes were ongoing, as indicated or

suggested by the affidavit, cuts against a finding of staleness. <u>United States v. Robinson</u>, 139 Fed. Appx. 654, 657-58 (6th Cir. 2005).

Finally, as the government correctly argues, Defendant's contention that agents seized emails in violation of the ECPA is unavailing because, as shown by the government, it obtained search warrants from a magistrate judge to obtain email information from internet service providers. <u>United States. v. Warshak</u>, 631 F.3d 266, 288 (6th Cir. 2010).

Accordingly, for the reasons stated above, each of the Defendant's motions to suppress is not well-taken and is **DENIED.**

    **IT IS SO ORDERED**

Date August 11, 2014          s/Sandra S. Beckwith
                                            Sandra S. Beckwith
                               Senior United States District Judge